UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 10-50271 |
| M & J GENERAL CONTRACTORS, LTD, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |

## FOURTH AMENDED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND NOTICE OF FINAL HEARING

This matter coming before the Court on the status of the Third Final Order Authorizing Debtor to (i) Utilize Cash Collateral Pursuant to 11 U.S.C. §363; and (ii) Granting Adequate Protection to Pre-Petition Secured Lender Pursuant to 11 U.S.C. §361 ("Emergency Motion").

Notice of the filing, together with notice of the hearing on the Motion to Extend the Use of Cash Collateral, has been given by M & J General Contractors, Ltd. ("Debtor") by U.S. Mail to the United States Trustee, Fifth Third Bank ("Lender") the Debtor's twenty largest unsecured creditors, and all entities that have requested notice of motions in this case. The Court having conducted preliminary and final hearings on the Motion to Extend Cash Collateral, having heard the statements of counsel with respect thereto, and being duly advised in the premises, now finds, as to paragraphs 1-4 below and the parties hereto stipulate to the matters set forth in paragraphs 5-12 below, as follows:

1.  The Debtor filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") on November 10, 2010 ("Petition Date").

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this district and division pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The notice of the final cash collateral hearing which the Debtor provided was sufficient and appropriate under the circumstances of this case, and satisfies the requirements of Rule 4001(b)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      The Debtor is presently operating as debtor-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in this case. The Debtor owns and operates a general contracting business specializing in building grocery stores across the nation.

5.      Debtor and Lender stipulate and agree, that, (a) as of the Petition Date, the Debtor owed the Lender unpaid principal in the amount of $995,810.94 ("Pre-Petition Loan"); (b) as security for Debtor's obligation to pay the Pre-Petition Loan, the Lender holds a valid and properly perfected senior security interest and lien ("Pre-Petition Lien") in and upon substantially all of the Debtor's personal property, together with the proceeds and products thereof ("Pre-Petition Collateral"); (c) the Lender holds a valid and perfected lien on and security interest in all of Debtor's cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"); (d) the Pre-Petition Loan constitutes a legal, valid and binding obligation of the Debtor, enforceable in accordance with its terms (except to the extent that enforcement is stayed pursuant to section 362(a) of the Bankruptcy Code); (e) the Pre-Petition Loan is not subject to any defenses, offsets, claims or counterclaims; (f) no portion of the Pre-Petition Loan is subject to avoidance, subordination or recharacterization pursuant to either the Bankruptcy Code or applicable non-Bankruptcy law.

6.      The Debtor and the debtor-in possession hereby waive, release, and discharge the Lender and the Lender's affiliates, agents, attorneys, officers, directors and employees from any and all claims and causes of action arising out of, based upon, or related to, in whole or in part,

2

(a) the Pre-Petition Loan, (b) any aspect of the pre-petition relationship between the Lender and the Debtor, and (c) and any other acts or omissions by the Lender in connection with either the Pre-Petition Loan or the Lender's pre-petition relationship with the Debtor.

7. The Debtor cannot successfully operate its business unless it can maintain its business operations, pay employees, pay for necessary goods and services and satisfy other working capital needs in the ordinary course of its business.

8. The Debtor does not have sufficient unencumbered cash or other assets with which to continue and operate its business in this Chapter 11 case.

9. The Debtor must have immediate authority to use Cash Collateral in order to continue its operations without interruption toward the objective of formulating an effective plan of reorganization for the benefit of all of its creditors.

10. The Cash Collateral will be used by the Debtor to pay actual expenses of the Debtor necessary to (a) the maintenance and preservation of its assets, and (b) the continued operation of its businesses.

11. As adequate protection for its use of the Lender's Cash Collateral, the Debtor will continue paying Lender the interest due pursuant to the terms of the Pre-Petition Loan, and has offered to grant the Lender a post-petition replacement lien on those categories of post-petition assets ("Post-Petition Collateral") which constitute the Lender's Pre-Petition Collateral, to the same extent, and with the same priority, as the Pre-Petition Lien. As further adequate protection for its use of Cash Collateral, the Debtor also agrees that the value of the Post-Petition Collateral shall, at all times, equal or exceed the value of the Pre-Petition Collateral, as that value existed on the Petition Date.

12. The Lender consents to the Debtor's use of the Lender's Cash Collateral, but only on the terms and conditions set forth herein. The adequate protection authorized and approved pursuant to the terms of this Second Amended Final Order (a) has been negotiated by the Debtor and the Lender in good faith and at arms' length, (b) is fair and reasonable under the circumstances of this case, (c) reflects the Debtor's exercise of its business judgment, and (d) is supported by reasonably equivalent value and fair consideration.

Based upon the foregoing findings contained above in paragraphs 1-4 and the stipulations contained above in paragraphs 5-12, it is hereby **ORDERED** as follows:

A. **Authorization to Use Cash Collateral.** The Debtor, as debtor-in-possession ("DIP") may use Cash Collateral to pay the ordinary expenses of operating its business in accordance with the terms of this Second Amended Final Order.

B. **Adequate Protection.** As adequate protection for the use of the Lender's Cash Collateral and for any decline in the value of the Pre-Petition Collateral as of the Petition Date:

(i) The Lender is hereby granted a perfected security interest in, and lien ("Adequate Protection Lien") upon, the Post-Petition Collateral to the same extent, and with the same validity and priority as the Lender's Pre-Petition Lien on the Pre-Petition Collateral.

(ii) The book value of the Post-Petition Collateral, determined in accordance with generally accepted accounting principles, and measured on a monthly basis, shall equal or exceed the book value of the Pre-Petition Collateral, as such value, determined in accordance with generally accepted accounting principles existed on Petition Date.

(iii)   Beginning on April 13, 2011, and continuing on the 7th business day of each month thereafter while this Order remains in effect, the DIP shall provide the Lender with a report, in a form acceptable to the Lender, in the exercise of its sole discretion, giving the book value, as of the last day of the preceding month, of each class of asset (e.g., accounts receivable, inventory, etc.) which is subject to the Lender's Post-Petition Lien.

(iv)   Debtor shall pay to Lender the interest due pursuant to the terms of the Pre-Petition Loan while this Order remains in effect.

(v)   Purchase and maintain insurance on the Post-Petition Collateral in an amount, and from an insurance company, acceptable to the Lender in the exercise of its sole discretion, which insurance shall name the Lender as an additional insured and as loss payee.

(vi)   Permit the Lender to credit bid its claim (the "Lender's Claim") at any sale of the Debtor's assets, including, without limitation, (a) a sale under either or both of sections 363(b) and 363(f) of the Bankruptcy Code, and (b) a sale pursuant to a plan of reorganization or a plan of liquidation.

C.   **Automatic Perfection**. This Order shall be deemed to be, and shall constitute, a loan and security agreement under the applicable provisions of the Illinois Uniform Commercial Code in effect from time to time. The Adequate Protection Lien granted to the Lender by this Order shall be deemed perfected upon entry of this Order without the necessity of filing or recording by any person of any document or instrument required to be filed or recorded under applicable non-bankruptcy law in order to perfect the Adequate Protection Lien. The validity and perfection of the Adequate Protection Lien granted to the Lender by this Order shall be

binding upon a successor to either to the DIP or the Debtor, a trustee appointed in this case under chapter 11 or 7 of the Bankruptcy Code, and upon any and all creditors of the Debtor or the DIP who have extended, or who may hereafter extend credit, to the Debtor or to the DIP, or who have asserted or who may hereafter assert a claim of any nature or in any manner whatsoever in this chapter 11 case, or in any superseding case of the Debtor under chapter 7 of the Bankruptcy Code. Anything herein to the contrary notwithstanding, the DIP shall execute such other security agreements and supporting documents as the Lender may request in order to document the Adequate Protection Lien granted to the Lender pursuant to the terms of this Order.

D.      **Termination**. The Debtor's authority to use Cash Collateral shall terminate on the earlier of (a) the occurrence of any Event of Default (identified below in paragraph L); (b) the confirmation of the Debtor's Plan of Reorganization; or (b) November 30, 2011, the date this Order is currently set to expire.

E.      **Bar Date For Objections to the Lender's Pre-Petition Claim or Loan**. Any party in interest (other than the Debtor) shall be barred from (1) objecting to the Lender's Claim, (2) seeking to subordinate or recharacterize the Lender's Claim or (3) challenging the validity, priority extent or perfection of Lender's Pre-Petition Lien unless an objection to the Lender's Claim or a complaint (a) seeking to disallow, subordinate or recharacterize the Lender's Claim, or (b) challenging the validity, priority, extent or perfection of the Lender's Pre-Petition Lien, is filed and served upon counsel for the Lender before 5:00 p.m. prevailing Central Time on June 20, 2011.

F.      **Post-Petition Effect of Pre-Petition Liens.** In addition to the Adequate Protection Lien granted in Paragraph B(i) above, Lender's Pre-Petition Lien shall extend to all of

the Debtor's property acquired post-petition, to the same extent, validity and priority as existed pre-petition, as provided by section 552(b)(1) of the Bankruptcy Code.

    G.    **Statutory Fees/507(b) Claim/506(c) Surcharge**.

    (i)    Anything in the Order to the contrary notwithstanding, the Adequate Protection Lien and claim under section 507(b) of the Bankruptcy Code granted to Lender herein shall be subordinate to amounts payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6).

    (ii)    To the extent that the adequate protection granted to Lender by the terms of this Order proves inadequate, including, without limitation, to the extent that the value of Lender's Pre-Petition Collateral, together with the proceeds thereof, diminishes during the pendency of this case or any superseding case under chapter 7 of the Bankruptcy Code, Lender shall have a claim pursuant to section 507(b) of the Bankruptcy Code, which claim shall have priority over any claim(s) allowed under sections 507(a) and 726(b) Bankruptcy Code.

    (iii)    Except as otherwise agreed to in writing by Lender, neither the surcharge provisions of section 506(c) of the Bankruptcy Code, nor the provisions of section 552(b)(1) of the Bankruptcy Code permitting the Court, after notice, to limit the post-petition effect of Lender's Pre-Petition Lien based on the equities of the case, shall be imposed either on the Lender, the Pre-Petition Collateral or the Post-Petition Lien.

    H.    **Parties' Rights to Seek Modification.** This Order is without prejudice to the right of the DIP to seek a modification of this Order, and increased use of Cash Collateral, after

notice and hearing, and is also without prejudice to the right of the Lender to seek a modification of this Order, decreased use of Cash Collateral or additional adequate protection, after notice and hearing.

I. **Lender's Right to Object.** Nothing in this Order shall (a) constitute or be construed as, consent, acknowledgment or agreement by the Lender, or (b) constitute a waiver or estoppel, with respect to the rights of the Lender to dispute (i) the validity or accuracy of the Debtor's calculations which serve as a basis for entry of this Order; or (ii) the allowance or payment of administrative expenses, including, without limitation, fees and expenses of the Debtor's professionals. Lender's consent to the terms of this Order shall not constitute an admission that Debtor's compliance with the terms of this Order constitutes adequate protection for the Lender's interest in the Debtor's property and shall not be deemed a waiver of Lender's right either to request additional adequate protection, or to seek relief from the automatic stay for cause, including, without limitation, lack of adequate protection.

J. **Debtor's Obligation to Provide Information.** The Debtor shall provide the Lender with (i) any information reasonably requested by Lender regarding Debtor's assets, liabilities, income, expenses, transactions with third parties and pre- and post-petition transfers, including, without limitation, all reports and financial information required by the pre-petition loan documents or executed in connection with the Pre-Petition Loan, including, without limitation, (i) all notes, security agreements mortgages, financing statements, applications, commitment letters and related documents, together with any modifications, substitutions, extensions and renewals thereof (collectively, the "Loan Documents"); (ii) any documents reflecting the grant to, and perfection of, any security interest of other creditors in the assets of Debtor; (iii) all documents regarding other loans by any entity or other entities to the Debtor; and

(iv) any and all documents or other information relating to information which Debtor disclosed, or should have disclosed, on its Statement of Financial Affairs, as the same may be amended from time to time. Furthermore, Debtor shall in good faith and in a reasonably prompt manner: (a) provide to the Lender the financial reports submitted by the Debtor to the United States Trustee's Office, and such other information as the Lender may reasonably request from time to time; (b) answer inquiries and requests of the Lender and its professionals for information and/or documentation; and (c) provide full cooperation and information to the Lender as to the value and description of assets of Debtor and the sale or liquidation of those assets.

K. **Lender's Right to Inspect.** Debtor agrees that Lender and its agents, independent contractors and professionals, shall be entitled to inspect Debtor's property and books and records during regular business hours following not less than 48 hours' notice to the Debtor.

L. **Events of Default.** The DIP shall be in default hereunder upon the occurrence of any of the following events (each an "Event of Default"):

    (i) DIP's failure to make any payment to Lender required by this Order;

    (ii) DIP's failure to comply with (a) any other provision of this Order, or (b) any reporting or other requirements imposed by the Bankruptcy Code, the Bankruptcy Rules, the local rules or the United States Trustee;

    (iii) DIP ceases operations;

    (iv) DIP's failure to timely pay any post-petition tax obligations;

    (v) Dismissal or conversion to chapter 7 of Debtor's chapter 11 case;

    (vi) Appointment of a chapter 11 trustee or examiner for the Debtor;

(vii)   A request by the DIP or any other entity that the Court grant a lien or security interest in any of Lender's Pre-Petition or Post-Petition Collateral which lien is senior in priority to, or *pari passu* with, either or both of the Lender's Pre-Petition or Post-Petition Lien;

(viii)  Reversal or modification of this Order on appeal or otherwise;

(ix)    The filing of any pleading (a) challenging the validity, priority, extent or perfection of the Lender's Pre-Petition Lien; (b) seeking to disallow, equitably subordinate or re-characterize all or any part of the Lender's Claim, or (c) seeking damages from the Lender on account of Lender's pre-petition or post-petition action or inaction; and

(x)     Any event occurs subsequent to this Order which Lender reasonably believes materially or adversely affects the value or condition of Lender's collateral or Debtor's business or financial condition and which is not cured following five days' written notice by Lender to Debtor's counsel.

M.   **Lender's Remedies Following Debtor's Default.** Upon the occurrence of an Event of Default, DIP's authorization to use Cash Collateral shall immediately cease. DIP may resume use of Cash Collateral if the Event of Default is cured to Lender's satisfaction or, after notice and a hearing, the Court authorizes DIP's continued use of Cash Collateral. Further, upon the occurrence of an Event of Default, Lender shall be entitled to file an emergency motion seeking relief from the automatic stay and/or abandonment of any of Lender's collateral, which motions may be heard by the Court as soon as practicable based on the Court's calendar following three business days' written notice by the Lender to the DIP.

N. **Modification.** If any or all provisions of this Order are hereafter modified, terminated, vacated or stayed by subsequent order of this Court, or any other court, such modification, termination, vacation or stay shall be prospective only and shall not affect the validity, priority or enforceability of the liens, priorities and other adequate protection granted Lender (a) by this Order, or (b) by any other order or orders allowing the continued use of Cash Collateral, prior to the effective date of any such order modifying, terminating, vacating or staying this Order.

O. **Lender's Right to Request Additional Adequate Protection.** Lender reserves the right to seek relief from automatic stay, further adequate protection or any other remedy or relief, which right shall not be impaired by this Order.

P. **Prohibited Use of Cash Collateral.** Lender's Cash Collateral shall not be used to pay any fees or expenses incurred by any party in interest relating to (i) any objection to, or request to subordinate or recharacterize the Lender's Claim, or (ii) any adversary complaint filed against the Lender.

Q. **Depository Accounts/Checks.** The DIP agrees, and is hereby ordered and directed, to maintain the Debtor's depository accounts, if any, with the Lender. Except as otherwise provided herein or as agreed to by Lender, as soon as practicable after entry of this Order, the DIP shall (i) close all accounts it maintains at other banks and (ii) deliver to Lender any and all checks which constitute proceeds of the Pre-Petition Collateral and which are delivered directly to the Debtor or to the DIP. Lender shall have no liability whatsoever to any entity, including, without limitation, the Debtor and the DIP, as a result of having (a) processed, honored or paid any item, draft or payment order, (b) permitted or accepted any funds transfer, or (c) otherwise debited or permitted a debit to any account of the Debtor at Lender, including,

without limitation, any ACH transfer, to the extent that any such action results in the payment of one or more prepetition obligations of the Debtor. Lender shall have no obligation to determine whether any of the foregoing transactions in any account of the Debtor's at the Lender are authorized by the Court or by the Code, or are in violation thereof. The provisions of this paragraph shall be effective as of the Petition Date.

R.    **Survival.** The provisions of this Order shall be binding upon and inure to the benefit of the Debtor, the DIP and Lender, and their respective successors and assigns, retroactively to the Petition Date. The terms of this Order and the Loan Documents shall be valid and enforceable obligations of the Debtor and the DIP against any subsequent Chapter 11 or Chapter 7 trustee for the Debtor. The Adequate Protection Lien granted to Lender herein shall survive conversion or dismissal of this case.

S.    **Plan of Reorganization or Other Subsequent Orders.** Absent prior written consent of Lender, the validity, priority and extent of the Adequate Protection Lien granted to the Lender pursuant to this Order shall not be modified, altered, or affected in any manner, (a) by a plan of reorganization or a plan of liquidation, or (b) a subsequent order by this Court.

IT IS FURTHER ORDERED that the Debtor shall serve a copy of this Order and Notice by overnight delivery, courier, or facsimile within one (1) business day from the date hereof, on the Office of the United States Trustee, the Lender, any entity claiming a lien on Debtor's assets, the Debtor's twenty largest unsecured creditors and all entities that have requested notice of pleadings filed in this case.

Dated: 10-18, 2011

_____
UNITED STATES BANKRUPTCY JUDGE

Budget for M & J General Contractors

|  |  | Oct-11 | Nov-11 |
|---|---|---:|---:|
| Income |  |  |  |
|  | Collection of AR/Gross Sales | $ 412,328.27 | $ 440,606.84 |
| Expenses |  |  |  |
|  | Building Supplies | $ 6,800.00 | $ 7,000.00 |
|  | Equipment Rentals | $ 4,500.00 | $ 3,725.00 |
|  | Subcontractors | $ 246,905.00 | $ 266,724.04 |
|  | Automobile Expense | $ 500.00 | $ 500.00 |
|  | Rent | $ 3,993.00 | $ 3,993.00 |
|  | Insurance | $ 13,795.67 | $ 13,795.67 |
|  | Office Expenses | $ 500.00 | $ 500.00 |
|  | Payroll Expenses | $ 320.00 | $ 320.00 |
|  | Professional Fees | $ 6,500.00 | $ 2,500.00 |
|  | Interest Expense | $ 3,500.00 | $ 3,500.00 |
|  | Salaries & Wages | $ 77,054.00 | $ 83,400.00 |
|  | Payroll Taxes | $ 11,558.10 | $ 12,510.00 |
|  | Total | $ 375,925.77 | $ 398,467.71 |
|  | Projected Profit / Loss | $ 36,402.50 | $ 42,139.13 |
| Aged Receivables |  |  |  |
|  | Less than 30 Days | $ 412,328.27 | $ 440,606.84 |
|  | Between 31 and 60 Days |  |  |
|  | Between 61 and 90 Days |  |  |
|  | Older than 91 Days | $ 1,068,113.68 |  |
|  | Total AR | $ 1,480,441.95 |  |
| Projected Receivables |  |  |  |
|  | Kroger Job #824 West Lafayette, IN |  | $ 105,106.20 |
|  | Kroger Job #803 Weirton, WV |  | $ 402,829.51 |
|  | Kroger Job #511 Toledo, OH |  | $ 700,000.00 |